## Board of Councilmen of the City of Frankfort v. Board of Education of the City of Frankfort.

(Decided June 22, 1926.)

### Appeal from Franklin Circuit Court.

1 Municipal Corporations—City Renewing Bonds and Paying Interest Until Maturity Cannot After 40 Years Plead Want of Consideration, or Deny Receipt from Lottery (Acts 1881-82, c. 1292; Acts 1883-84, c. 459; Acts 1889-90, c. 1700; Acts 1837-38, c. 703; Acts 1848-49, c. 317; Acts 1891-92-93, c. 222; Ky. Stats., Sections 3462, 3469, 3474, 3475).—In action to compel payment of school bonds authorized by Acts 1881-82, c. 1292, Acts 1883-84, c. 459, Acts 1889-90, c. 1700, to pay amount due from city for fund collected from lottery authorized by Acts 1837-38, c. 703, city renewing bonds in 1904 and paying interest thereon until maturity cannot after 40 years plead want of consideration or deny receipt from lottery of amount for which bonds were issued, though bonds are not in hands of purchaser, in view of Acts 1848-49, c. 317, Acts 1891-92-93,

c. 222, Ky. Stats., sections 3462, 3469, 3474, 3475, relating to school funds of city.

2. Evidence.—School bonds, containing on their face absolute promise to pay, cannot be varried by parol in absence of fraud or mistake.

3. Municipal Corporations—City Paying Interest on School Bonds Until Maturity Cannot After 40 Years Rely on Fraud or Mistake to Avoid Liability, but Must Issue Renewal Bonds (Acts 1881-82, c. 1292; Acts 1883-84, c. 459; Acts 1889-90, c. 1700; Constitution, Section 159).—City paying interest until maturity on school bonds issued under Acts 1881-82, c. 1292, Acts 1883-84, c. 459, and Acts 1889-90, c. 1700, cannot after 40 years rely on fraud or mistake to avoid liability on bonds, but must issue renewal bonds and provide for sinking fund to pay them, as required by Constitution, section 159.

JAMES H. POLSGROVE for appellant.

O'REAR, FOWLER & WALLACE and EDELEN & McLEOD for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS— Affirming.

By an Act of the General Assembly, approved February 1, 1838, Acts 1837, 1838, p. 126, it was enacted that five men therein named were authorized to raise, by way of lottery, any sum not exceeding $100,000.00, to be appropriated, one-half for the use and benefit of a city school in Frankfort and the other half for the construction of waterworks for the city. As shown by the preamble of the act it was necessary to establish a public school, suited to the wants and conditions of the city, as the Franklin Seminary had been lost to the city. It was also recited that it was necessary to supply the city with water. By an act of the General Assembly, approved April 26, 1882, Acts 1881-1882, vol. 2, p. 840, it was enacted by the assembly that the city was authorized to issue coupon bonds in a sum not exceeding $70,000.00 in the aggregate for any period not exceeding twenty years. Of said bonds $35,000.00 should bear interest at six per cent and be delivered in payment of that amount due from the city for the fund collected by it from the lottery, and when so issued to be delivered to the care of the sinking fund commissioners for safekeeping. The remaining $35,000.00 of the bonds should be sold and disposed of by the board of councilmen in such a manner as was deemed best by the board of sinking fund commissioners for the interest of the city. By an act, approved

March 26, 1884, Acts 1883-1884, p. 809, it was enacted
that the city was authorized to issue its coupon bonds in
sums not exceeding $75,000.00 in the aggregate for any
period not exceeding twenty years, bearing interest not
exceeding six per cent. Of said bonds $50,000.00 should
bear interest at six per cent, be specially registered as
issued and delivered in payment of that amount due
from the city for the fund collected by it from the lottery,
and when so issued to be delivered to the sinking fund
commissioners for safekeeping. The remaining $25,000.00
of bonds should be sold upon such terms and in such
manner as may be deemed best for the interests of the
city. By an act approved May 22, 1890, it was enacted
that the city was authorized to issue its coupon bonds in
the sum of $10,000.00, said bonds when issued to be de-
livered to the sinking fund commissioners of the city
of Frankfort in payment of that amount due from the
city for the funds collected by it from the lottery fran-
chise. Said bonds when so issued to be delivered to the
sinking fund commissioners of the city for safekeeping
and be held by them as an investment for the benefit of
the Frankfort public school. The bonds provided for
by these acts were duly issued. The city paid the school
board the interest on the bonds regularly and until 1904.
By an ordinance of the city, then duly enacted, renewal
bonds in the sum of $85,000.00 due in twenty years, were
issued by the city, payable to bearer and delivered to the
school board. The city paid the interest on the bonds
until they matured. On March 26, 1925, the school board
brought this action against the city, charging that the
bonds properly came to its hands as part of the school
funds of the city, but that the city since July 1, 1924, had
paid no part of principal or interest, although often re-
quested so to do. Judgment was prayed against the
city for the money. The city by its answer denied that
it had received from the lottery any sum exceeding
$10,000.00. These affirmative allegations follow:

"The defendant says that all of the said school
bonds, amounting to $95,000.00, including those in-
volved in this suit, were delivered to the school board
and to the plaintiff, board of education, and the
plaintiff and its predecessors accepted and held the
same for safekeeping, and with the distinct under-
standing and agreement, and subject to the limita-
tions and conditions, that they were irredeemable

and never to be paid and that said bonds were to be stamped on the face of each with the words 'non-negotiable,' and the originals of the said several issues were to be stamped, and in that condition were delivered to and accepted, and held, by the plaintiff and its predecessors.

"The defendant says that prior to the adoption of the present constitution a levy of .25c on the $100.00 of taxable property in the city was the maximum allowed for school purposes; that the issue of bonds now held by the plaintiff, including those sued upon, was a scheme adopted by the city council and school board to enable the raising of sufficient revenue to conduct the schools of the city, by collecting from the sinking fund the interest on said bonds and turning it in to the school fund; the sinking fund being replenished and reimbursed by general taxation; that there was never any intention on the part of the school board, or the city council, that said bonds, or any of them, would ever be liquidated; that they have never been regarded as a part of the public debt of the city, nor previously by the school board, as an asset. But the defendant says that on account of the fact that said bonds are outstanding and because the plaintiff is now claiming them as an asset belonging to the school fund and continually demanding payment thereof, the defendant is being harassed and embarrassed and its credit is being impaired.

"The defendant says that under the present law a levy up to $1.50 can be made for school purposes, in any year, if the plaintiff demands it, and sufficient funds can be secured and be made available by the plaintiff to take care of the expenses of maintaining the schools of the city and it now desires to change the method adopted for the support of the city schools and withdraw from the hands of the school board and cancel the $95,000.00 of bonds held by it for which no considerations ever passed from it to the defendant.

"Wherefore, the defendant prays as in its original answer, and further that this cause be transferred to the equity docket and that said entire $95,000.00 in bonds be cancelled and be held for naught. It prays for its costs and for all proper relief."

In addition to the $85,000.00 of bonds the city had issued $10,000.00 of bonds pursuant to the act of May 3, 1884, for the purpose of erecting a colored school house, but these bonds are not in issue. The circuit court sustained a demurrer to the answer and gave judgment for the plaintiff. The defendant appeals.

The charter of the city in force before the adoption of the present constitution contained, among other things, this provision:

"Section 4. All bonds, obligations, debts, claims and demands of what kind or nature so ever, due to, or from the present board of trustees of the town of Frankfort, shall continue as existing obligations, debts and claims due to, or against, the board of councilmen of the city of Frankfort; and suits may be brought by, or against the said board of councilmen for the recovery of the same, in the same manner that the act to which this is an amendment authorized the institution of suits by, or against, the board of trustees of the town of Frankfort." (See "Act to amend laws relating to the town of Frankfort," approved February 21, 1849, Acts 1849, page 216.)

It was also provided under the old law that the public schools of the city should be under the exclusive control of a board of trustees, to be elected at the same time and for the same term as members of the general council of the city, and that all taxes and money received for school purposes should be kept in a separate fund to be known as the school fund, and separate reports should be made of all moneys belonging to the school fund. The act passed in 1893 for the government of cities of the third class, including Frankfort, provides that the city schools shall be under control of the board of education, Ky. Stats., sec. 3462; that the city shall make such a levy of taxes as may be necessary for school purposes, sec. 3469, and that the board of education shall have exclusive control of all school funds of the city, from whatever source same may be derived, sec. 3474. Then follows this provision:

"That all indebtedness, bonded or otherwise, and all liabilities and contracts of the school board, existing at the time this law takes effect, and all taxes, funds, sinking funds, or other resources that

have been pledged or set apart for the payment of the principal and interest thereof, shall continue unimpaired and remain of the same force and effect as though the same had been authorized and contracted by the express provision of this law." Ky. Stats., sec. 3475.

Although the bonds are not in the hands of a purchaser the city cannot plead want of consideration for them or now maintain that it did not receive from the lottery the amount for which the bonds were issued. These facts are set out in the Acts of the General Assembly passed more than forty years ago. The bonds were issued by the city under those acts, which was an acceptance of them by the city, and when the bonds so issued matured they were renewed by the city. After forty years and in view of this conduct by the city, it cannot be heard to say that it did not receive the $85,000.00 from the lottery.

The bonds are on their face promises to pay. Like any other written contract in the absence of fraud or mistake, the city is bound by the terms of the written contract which it signs and delivers. The bonds are an absolute promise to pay and this absolute promise cannot be varied by parol evidence in the absence of fraud or mistake. After forty years and the renewal of the bonds in 1904 it is too late for the city to rely upon fraud or mistake and the contract must be enforced according to its terms.

The city should issue to the board of education renewal bonds, payable at such time as the city council may designate, and it should provide not only for the payment of the bonds but also a sinking fund to pay them at maturity, as provided in section 159 of the Constitution:

"Whenever any city, town, county, taxing district or other municipality is authorized to contract an indebtedness, it shall be required, at the same time, to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness, and to create a sinking fund for the payment of the principal thereof, within not more than forty years from the time of contracting the same."

As we understand the record the purpose of the suit was simply to have a judicial settlement of the rights of

the school board and the city. As the city was refusing to renew the bonds or to pay interest there was no substantial error in the judgment of the circuit court.

Judgment affirmed.